All right, and now we have the case of Levy v. Wilkie, No. 20, 1877. We'll begin with Mr. Holloway. Good morning, Your Honor. Philip Stevens Holloway for the appellant, Mr. Levy. Before I begin, I just want to notify the court that I have reserved three minutes of time for rebuttal. You need to just watch the clock. When it hits three minutes, then you're in your rebuttal time. Three minutes, okay. Thank you, Your Honor. May it please the court, in Coleman v. Donahoe, this court held that whether a comparator is similarly situated is usually a question for the fact finder. In summary, judgment is appropriate only when no reasonable fact finder could find that plaintiffs have met their burden on the issue. The inquiry is not meant to devolve into a one-to-one mapping exercise and is not a search for factual clones. This court has also held that so long as the distinctions between a plaintiff and the proposed comparators are not so significant that they render comparison effectively useless, the similarly situated requirement is satisfied. Further, to be a sufficiently similarly situated comparator, the individual ordinarily should have dealt with the same supervisor, been subject to the same standards, and engaged in similar conduct with comparable seriousness. In this case, there is no dispute that the appellant, Benjamin Levy, and the proposed comparator, Kerry Colby, were both under the command of Chief Gary Marsh. There is also no dispute that both Levy and Colby were subject to the same agency policies preserving sexual harassment of any visitors, patients, and fellow employees. The district court, in its ruling for summary judgment, by comparing Levy and Colby's conduct, engaged in the fact finder's role. It searched through or compared their conduct and found that they were not similarly situated because of various circumstances relative to the two individuals' conduct towards Ms. Bredermeier, Ms. Colby, Mr. Colby, and with respect to EF and Officer Levy. So how do you respond to the Secretary's argument that in Mr. Levy's case, there were dual reasons, one, the alleged conduct, but two, the failure to cooperate with the investigation? With respect to your Honor's question, how do I deal with the district court's argument? First of all, the initial adverse employment actions occurred well prior to Mr. Levy's suspension, which was in part for his failure to appear, a supposed failure to appear in an investigatory interview. He was removed, immediately removed, even prior to Chief Marsh knowing what the allegations were against Mr. Levy, he immediately had his badge and gun removed from him and his arrest authority removed and was placed on the day shift, which, of course, as we point out in our briefs, lost him both a definite shift differential pay, as well as steady and constant overtime from January 15th. To January 31st, going forward to the end of his suspension in, I believe, April of 2017. So part of the differentiation between Levy and Colby would not apply with respect to his failure to, with respect to Levy's failure to participate in the interview prior to the suspension. And also, you can differentiate that distinction by the fact that because Colby wasn't subjected to any interview whatsoever, certainly not a second one, other than Chief Marsh offhandedly asking him, did you sexually harass Ms. Redermeier, that there is definitely a difference in between the treatment of the two. Mr. Holloway, can I ask you a question? And not so much a difference as to render them completely and, or completely, or render a comparison completely useless by a fact finder. Mr. Holloway? Yes, sir. Can I ask you a question about, I think your point's pretty well taken on the arguments you make around your client receiving the two-week suspension and Captain Colby receiving, you know, no suspension. But you also argue that your client's being asked to sit for that second interview is an adverse employment consequence or constitutes an adverse job action. Can you spell that out for me a little bit? I have a hard time seeing that. Well, to begin the analysis of that, it's important to recognize that Mr. Levy, Officer Levy, was subjected to an initial interview where he was read his Miranda and Weingarten rights. Therefore, putting him at least in some what we would consider reasonable fear of criminal prosecution going forward from July 31st. Mind you, some months have passed. And then on August 3rd of 2016, not too long after the initial meeting with, or investigation by Carrie Colby and Officer Strozier, my client makes his informal EEO contact. So he's in the position where he's filed an EEO claim. And he's already been suspended, or not suspended, but placed on the day shift and had his officer's credentials and firearm removed. He's been sitting there for several months. And I believe it would be four weeks, maybe four and a half, maybe five weeks after he files his initial EEO contact, he received notice that he's required to sit for a second interview. And because he had been read his Miranda rights in the first, he believed that he would somehow be subject to criminal prosecution if he appeared for that interview without protection. So it's not the normal interview. I believe the case cited by the district court, I can't, the name of the case is Morningstar, Keaton v. Morningstar, was just a simple investigation without the factors that are present here. Didn't the department eventually, after a couple of schedulings and reschedulings, agree that he would be permitted to invoke his Fifth Amendment rights at the renewed hearing? They would have done so. They did do that, Your Honor. But he, that was the, whatever it was, December 16th or so hearing. And he did not attend that hearing, even though. Okay, go on. That is correct, Your Honor. I would say that the mechanics of how the hearing would have played out or not hearing the investigative interview with Lieutenant Elena would have played out or less important to the analysis to whether it was a adverse employment action, less important than whether or not it would have deterred being subject to the interview at all without constitutional protections would have deterred Mr. Levy from, or any employee for that matter, from filing an EEOC claim, particularly given the fact that the request for the second interview came on the heels of Mr. Levy filing his EEOC, at least his informal complaint. Your Honor, I'd like to reserve the last two minutes and 13 seconds of time for my rebuttal. Thank you. That's fine.  Haley? Hale? Hale. Hale. Okay. May it please the court, counsel. Based on an investigation that was conducted by an African-American investigator, plaintiff Benjamin Levy was found guilty of truly awful behavior towards a woman who was entrusted into his care to drive her to her VA-provided lodging while she was there on a visit to her ailing father. I don't think it's pertinent that the investigator was African-American or anything else. One assumes professionalism. Well, I agree with that. The point I'm making about it being an African-American investigator is that Mr. Levy is not challenging the motives of this investigator. You do know, of course, that in both on Cal against Sundowner and also in Castaneda against Partita, the Supreme Court has squarely rejected the idea that people of one particular group are just automatically going not to discriminate against people of another, people of their same group. So, anyway, go on. I agree with that, and that's not the implication I meant to make. The point I'm making is that it wasn't Chief Marsh that did the investigation of Benjamin Levy. It was somebody else, and it's somebody that no one is claiming was in any way biased against Mr. Levy. And she conducted the investigation. She interviewed him. She interviewed EF. But she's not a decision-maker. Right. Mr. Marsh was the decision-maker for both. You don't dispute that. He wasn't the decision-maker about who was, you know, he had to act on the evidence that was presented to him. So the investigation with Carrie Colby, Sharice Bredermeier took her complaint directly to Chief Marsh. You know, she told him about her allegations about an incident that happened in the cafeteria. Chief Marsh heard her out and talked to her witnesses that she brought with him, and then he undertook himself to investigate that. And he went and interviewed Carrie Colby, and he resolved that to his satisfaction based on that investigation. So, Mr. Hale, I'm a little troubled by the district court's determination, one basis, that they are not similarly situated here, specifically that Mr. Colby is not similarly situated to Mr. Levy, because somehow the underlying harassment wasn't as offensive. The district court seems to kind of brush off the allegations. And quite frankly, the allegations against Mr. Colby by this employee were that he made comments about her body parts in public, he followed her around, he stared at her, he came to her home. He went to her home. She was terrified by it. That's not insignificant. So can you address my concern? I'm troubled by this, what appears to be a determination of fact, that that's not as significant as the conduct that Mr. Levy was accused of, and therefore they can't be similarly situated, because that sounds pretty significant to me. Well, I think the one thing to keep in mind as we talk about this, and I will address the differences between the two cases, but I think one thing to keep in mind when we talk about this, there's a mismatch between Mr. Levy's case and the relief he's seeking. So he's not asking to have Kerry Colby punished for his misconduct, and he's not asking to have money go to Sharice Brademeyer or something happen to help her out and alleviate her situation. He's asking to be let off scot-free, have his suspension rescinded, get money for emotional damages, for conduct that is admitted and not contested in this case. I think that's an overstatement, actually. There's some aspects of the conduct to which he admitted and other very troubling aspects of the conduct to which he has not admitted, and I think what he is seeking is an even-handed disciplinary process. Now, of course, if Hines doesn't punish anybody for sexual harassment, Hines better take another look at its policies, but Mr. Levy is making an argument for equality, which is, after all, what the statute guarantees. And your argument about the underlying conduct may go to the question of damages, but I think that's one for the jury. Well, my point is just that he admits that he didn't show up for the interview when he was asked to and told he could give his Fifth Amendment rights. He admitted some conduct, like holding EF's hand too long and saying to her, hand, let her go, let her go, hand, let her go. He admits that he could have said something about her being excited, that he took the wrong way. Mr. Hale, the problem I have with that argument, though, is there's no question he has admitted to some wrongdoing here. There is no doubt about it. I understand his argument to be fine, but when you dispense with discipline, you have to do so in a non-discriminatory way. And this other fellow, Colby, engaged in conduct that was as or more serious than I engaged in, and he received no punishment. I think that's his argument. Mr. Holloway can correct me, but that's the way I interpret it. I agree. That's right. My point is that he admits some things, then he refuses to answer questions, saying he's afraid he may go to jail if he comes in for that interview. Can I just interject? That's why I think I was troubled by the district court saying sitting for a second interview is a minor inconvenience. If that's all it was, I would say, okay, so you've got to take a few hours off and sit for an interview. But it's the overlay of the shadow of potential criminal prosecution of these protections, even if it's just being able to assert your Fifth Amendment right. It wasn't just taking hours or so to go have an interview. There was a very coercive overtone to this. Right. My point is the VA got it right with respect to Benjamin Levy. And so his case is that the VA botched another investigation. And so our objective here is to make sure that Mr. Levy was not treated worse because of his race. And so if we have the idea that the VA botches a sex harassment investigation in the past, that means they cannot, going forward, take action to effectively stop sexual harassment. Or that if they do, they at minimum have to risk a big jury verdict. On the record here, why isn't that an argument for the jury? Because the question here is, did the district court err in finding as a matter of law that Mr. Colby and Mr. Levy were not similarly situated? You're making arguments now that go beyond and go to the merits of the underlying conduct at issue. So I think that you want to look. The conduct is the district court properly found that there were big distinctions in the conduct. Now, Colby, excuse me, Levy was credibly excused. What are they, Mr. Hale? What are those big distinctions? Well, I know I read the district court opinion. Just tell me what you think they are. Well, I think for the discipline at the end, Mr. Levy refused to. He had a direct order come in and sit for an interview. You know, this was that number one. What's number two? Well, that's enough of a distinction right there as far as the suspension goes. That's a huge distinction. I think there are differences in the conduct, but I don't really think that is the biggest part. But sitting for the interview was, I think, one of eight or nine or 10 reasons that they gave for the ultimate suspension. It wasn't the primary reason. It wasn't the only reason for the suspension. It was one of many reasons. I think it's a huge reason. I don't see how the VA could possibly tolerate a police officer who's credibly accused of misconduct, telling them that I'm not going to sit for an interview because I'm worried that truthful answers may send me to jail. I'm not saying they should, but it's the different treatment that's at issue here. Well, I think the difference, you know, his argument, he does have an argument about the investigations. And that's what I was starting to talk about. You know, Chief Marsh, as they point out, is somebody who credits his officers, right? I mean, we're looking to get inside Chief Marsh's head, right? And so he's somebody, his mindset is he credits his officers. And you can fault him for how he investigated Colby. But you can't compare that to what happened with Levy, because the complaint against Levy came in, you know, EF was found crying by a social worker. The social worker then took the complaint to Officer Felicia Strozier. And so at this point, Chief Marsh hasn't even been notified of this. And Felicia Strozier then interviews EF. And it's at that point, and you can see that in the record in the police report at 51-2. And what she does is she, it's at that point that Chief Marsh is even first notified of it. So now this whole investigation is in gear. And it's Felicia Strozier, not Chief Marsh, who finds that EF is credible and Levy is not credible. So that's my point is there are all these differences, the ones the district court had and others. If you're trying to get inside of Chief Marsh's head. All right. I think you need to wrap it up there. Well, I think that completed my thoughts. So thanks for your patience. Thank you very much. Anything further, Mr. Holloway? Yes, Your Honor. In response to Judge Scudder's question, that is defendant's argument. He is not excusing whatever conduct that a jury could find he committed. It's he's asking for, as Your Honor said, Judge Wood, that he be treated the same and not discriminated based on his race because of the conduct. And with respect to the allegations or Mr. Hales or the government's argument regarding how Chief Marsh dealt with the investigation by interviewing Colby on one instance, puts aside the fact that my client, I'm sorry, that Miss Bredermeier, based on Mr. Colby's continued harassment, filed a police report two weeks after she spoke to less than two weeks after she spoke to Mr. Marsh and nothing was done in regards to that police report. She then filed an EEO complaint, then filed a lawsuit. And while that lawsuit was pending, Mr. Colby continued to stalk her even after she left or switched jobs for other reasons. Do we know what the outcome of that lawsuit was? Bredermeier v. McDonnell was settled by the government.  I believe it's a matter of record, Your Honor, in the district court. And to the extent that the government argues that the Chief Marsh's investigation was cabined or siloed within that one instance in May of 2013, at the very least, as of September 1st, 2016, when he was deposed in the Bredermeier case, he was apprised of each and every instance of Colby's continued harassment of Miss Bredermeier. This was after the Levy situation had already been hatched and was in motion and did nothing. So that's another basis by which the parties are similarly situated, which the fact finder could find discrimination based on that treatment. And with that, Your Honor, I ask the court to reverse the district court's grant of summary judgment and remand the matter for trial. Thank you. All right. Thank you very much. Thanks to both counsel. The court will take the case under advisement and we will be in recess.